IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MUREL HOLLAND, #182751          *
               Plaintiff,
     v.                  * CIVIL ACTION NO. WMN-05-2914

FRANK C. SIZER JR.           *
LEHRMAN DOTSON
SIMON WAINWRIGHT        *
DWIGHT JOHNSON
COL. A. BAILEY             *
            Defendants.
                      ***

## MEMORANDUM OPINION

I.    Background

This is a 42 U.S.C. § 1983 prisoner civil rights action which was received for filing on October 25, 2005. Plaintiff complains that for the three-month period following his July 25, 2005, transfer to the Maryland Correctional Adjustment Center ("MCAC") he was subjected to: (i) the confiscation of his orthopedic shoes; (ii) the withholding of his personal law books, opinions, research material; (iii) the withholding of his religious books, pamphlets, and study papers; and (iii) unsanitary distribution of his meals. Paper No. 1. Plaintiff further claims that on August 14, 2005, Correctional Officer Bailey spat in his face and Defendants Sizer, Dotson, Wainwright, and Johnson were deliberately indifferent to the threat to his safety from retaliation and threats of harm made by Office Bailey on September 6, 2005.[1]

_____

[1]    Plaintiff was mandatorily released to a detainer in Anne Arundel County, Maryland on December 8, 2005. Paper No. 11, Ex. 1.

II.    Dispositive Filings

Defendants Sizer, Dotson, Johnson, and Bailey filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which shall be treated as a summary judgment motion. Paper No. 11.  On March 1, 2006, Plaintiff's Opposition response was received for filing.  Paper No. 13.  On April 17, 2006, Defendants were ordered to file a reply.[2]  In response, Defendant Wainwright filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment[3] and Plaintiff filed a response thereto.  Paper Nos. 20 & 25.  Further, Defendants Sizer, Wainwright, Dotson, Johnson, and Bailey filed their Reply on July 10, 2006.  Paper No. 31.  The case is ready for the Court's consideration.  Oral hearing is not necessary.  See Local Rule 105.6. (D. Md. 2004).

III.    Standard of Review

A.  Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal conclusions or pleaded facts, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.

---

[2]    Defendants were directed to file a response/reply which: (i) responded to Plaintiff's administrative remedy materials; (ii) cured any technical deficiencies associated with their exhibits; and (iii) explained why service of process was not accepted on behalf of Defendant Wainwright.

[3]    Wainwright's dispositive filing joins the Motion to Dismiss or for Summary Judgment filed by Defendants Sizer, Dotson, Johnson, and Bailey.

1989), or conclusory factual allegations devoid of any reference to particular acts or practices. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.  Motion for Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th

Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete

failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden

3

of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact issue.'"   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D. N.C. 1966)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

IV.   Applicable Federal Caselaw

Administrative Exhaustion

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

4

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Plaintiff's prisoner complaint falls under the

exhaustion prerequisites of § 1997e(a), and his claims must be dismissed unless he can show that

he has satisfied the administrative exhaustion requirement or that Defendants have forfeited their

right to raise non-exhaustion as a defense.   *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md.

2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. June 2, 2004) (per curiam).   Under *Chase* a Maryland

inmate may satisfy exhaustion by seeking review of an Administrative Remedy Procedure ("ARP")

complaint from the Warden to the Commissioner and then appealing the Commissioner's decision

to the Inmate Grievance Office ("IGO"), the *final level* of appeal within Maryland's administrative

grievance system for prisoners.   *Id.* at 529 (emphasis added).

In addition, the high court has recently expounded on the exhaustion issue, finding that

prisoners must complete the administrative review process, using all steps that the agency holds out

and doing so properly.   It concluded that proper exhaustion of administrative remedies demands

compliance with an agency's deadlines and other critical procedural rules because "no adjudicative

system can function effectively without imposing some orderly structure on the course of its

proceedings." *Woodford v. NGO*, 126 S.Ct.  2378, 2385-86 (2006).   Exhaustion under § 1997e(a)

is not a jurisdictional requirement and does not impose a heightened pleading requirement on the

prisoner.   Rather, the failure to exhaust administrative remedies is an affirmative defense to be

pleaded and proven by the defendant. *See Anderson v. XYZ Correctional Health Services, Inc.*, 407

F.2d 674, 682 (4th Cir. 2005).

Excessive Force

A claim of excessive force raised by a prison inmate against a correctional officer, such as

that alleged in the case *sub judice*, involves analysis of both objective and subjective elements.   *See*

*Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998); *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996).   The core judicial inquiry when analyzing the subjective element is to review "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).   The objective element is analyzed to determine whether the officers' actions were harmful enough to offend contemporary standards of decency.   *See Hudson*, 503 U.S. at 8. Factors which are pertinent to this inquiry include the extent of injuries suffered by the inmate, the need for the application of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by prison staff, and any efforts on the part of staff to temper the severity of their response.   *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321.   While the prisoner's injury need not be significant to violate the Eighth Amendment, something more than *de minimis* injury is required in order to prove that excessive force was used.   *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by the plaintiff is *de minimis* and the force is not of a source "repugnant to the conscience of mankind").[4]

Retaliation

Retaliation against an inmate for the exercise of a constitutional right states a claim under 42 U.S.C. § 1983.   *See American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 784-86

---

[4]      When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (1) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (2) did the inmate seek medical care; (3) were any injuries documented in the medical records generated shortly after the incident; and (4) are the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident. *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998); *Stanley v. Hejirika*, 134 F.3d at 634; *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir.); and *Norman*, 25 F.3d at 1264.

(4th Cir. 1993).  The inmate alleging retaliation "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial motivating fact in the prison officials' decision...."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Failure to Protect

To meet the standard for establishing a failure-to-protect claim under the Eighth Amendment, a prisoner must project evidence that a prison official "knows of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).

Conditions of Confinement

A prisoner may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions.  *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993).  Only extreme deprivations are adequate to satisfy the object component of an Eighth Amendment claim.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F. 2d at 1380-81;

*Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and unusual is to examine the effect on the prisoner. *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Further, prisoners are guaranteed a nutritionally adequate diet. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). This circuit has held that "inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted).

Access to Courts

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only where the inmate is able to demonstrate actual injury from such deprivation. *Id*. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id*. at 353. Rather, the *Lewis* Court concluded that *Bounds v. Smith*, *supra*, stood essentially for the proposition that inmates are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they be provided the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

V.    Analysis

The following facts are presented by Defendants.  On July 25, 2005, Plaintiff was transferred to MCAC.  Paper No. 11, Ex. 1.  Defendants claim that Plaintiff's property was inventoried and there is no record that his medical shoes or legal and religious materials were confiscated and destroyed during his confinement at MCAC.  *Id.*, Ex. 2 & Ex. 3, Wainwright Decl.

Defendants further claim that on August 14, 2005, Corporal Bailey was assigned to "Bravo Pod" when a segregation inmate James Lomax began flooding the tier and his cell. Paper No. 11, Ex. 5, Bailey Decl.   Defendant Bailey affirms that Plaintiff, who was housed next to Lomax, began calling the correctional officer names because Bailey had turned off the water in Plaintiff's cell.  *Id.* Bailey maintains that as he was turning the water on in Plaintiff's cell, Plaintiff spit on him and he reflexively spit back at Plaintiff, but did not spit in Plaintiff's face.  *Id.*   Bailey states that at that time James Lomax threw a cold liquid substance in his face and as he exited the tier he spit at Plaintiff's cell door.  *Id.*    Bailey denies that he threatened or carried out any reprisals against Plaintiff on September 6, 2005.   Defendants assert that there is no record that Plaintiff made accusations about the threats to MCAC administrators or that he filed remedies involving such threats.  *Id.*

Plaintiff did, however,  file a remedy on August 14, 2005, complaining that Bailey spit in his face.  *Id.*, Ex. 6.  During the course of the remedy investigation Bailey admitted spitting at Plaintiff and was disciplined for the incident.  *Id.*, Exs. 6 & 7.

With regard to Plaintiff's claims regarding the serving of his meals, Defendants claim that no MCAC correctional officers were authorized to drop, toss, or throw Plaintiff's meals into his cell

through the feed-up slot.  *Id.*, Ex. 3, Wainright Decl.   They indicate that there is no record that Plaintiff voiced complaints or filed remedies regarding food distribution.  *Id*.

In his first opposition Plaintiff again claims that his shoes along with his legal and religious material were confiscated and withheld.  Paper No. 13.  He alleges that Corporal Bailey spit in his face and threatened him with bodily harm.  He maintains that upon his transfer to MCAC Assistant Warden Wainwright ordered that his meals be dropped or thrown into his cell through the feed-up slot.  *Id.*    In addition, Plaintiff claims that he filed remedies with regard to the aforementioned issues.  *Id.*

In his second opposition Plaintiff maintains that his meals were taped in Styrofoam containers which, when dropped on the floor of his cell, burst open causing the contents to become inedible.  Paper No. 25.  He claims that while he managed to salvage some of the food, he was nonetheless deprived of three daily nutritionally adequate meals.   *Id.*  Plaintiff also states that because he was not provided his legal materials he was unable to comply with state court order.  *Id.*

In their Reply Defendants state that Plaintiff's conditions claim regarding food service must be dismissed in that before and during his MCAC confinement his weight remained at a constant 178 pounds and he suffered no physical harm as a result of the allegedly "dropped" meals.   Paper No. 31.   They further state that Plaintiff has failed to demonstrate actual harm caused by the alleged denial of access to his legal papers.   Paper No. 31.

The Court has examined the Complaint and responsive pleadings.  Defendants' dispositive motions shall be granted in part and denied in part.  Defendants maintain that Plaintiff's claims regarding retaliation, failure-to-protect, property confiscation, and food distribution are subject to dismissal for the failure to exhaust administrative remedies.  It is their burden to demonstrate non-

exhaustion.  The record shows, however, that Plaintiff did file remedies with regard to the August 14, 2005 incident with Corporal Bailey, alleged threats from Bailey, food distribution, and the confiscation and withholding of his personal property and fully exhausted his remedies to the IGO with regard to Corporal Bailey's assault, food distribution, and receipt of legal and religious materials.  *See* Paper No. 13, Exs. 2A-2E, 3A-3E, & 5A-5E, & 5H.  Therefore, only his retaliation, medical, and failure-to-protect claims are subject to dismissal under 42 U.S.C. § 1997(e) because they were not exhausted as to each step of the remedy process.[5]

There is no dispute that Corporal Bailey spit at least once at Plaintiff.  While the Court does not condone such action, this behavior does not comprise an Eighth Amendment violation due to the level of force used and the absence of injury to Plaintiff.[6]  Moreover, while Plaintiff levels a conclusory claim of retaliation, there is no evidence of any retaliatory action on the part of Corporal Bailey or that prison administrators failed to protect Plaintiff from such risk.[7]

Further, there is no dispute that Plaintiff's administrative remedy regarding the distribution of his food was investigated and dismissed.  Pursuant to established policy, due to Plaintiff's alleged

---

[5]     In any event, the Court also finds that Plaintiff has failed to establish Eighth Amendment violations with regard to his excessive force, retaliation, medical, conditions, and failure-to-protect claims.

[6]     *See Brown v. Vaughn*, 1992 WL 75008, at *2 (E.D. Pa. Mar. 31, 1992) (force used where guard struck inmate in chest and spit on him was *de minimis*)

[7]     To the extent that Plaintiff claims that Bailey later verbally threatened him on September 6, 2005, such an allegation fails to comprise a colorable Eighth Amendment claim.   *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 n. 11 (10th Cir.1998); *accord Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right" under section 1983); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir.1993);  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980); *Partee v. Cook County Sheriff's Office*, 863 F.Supp. 778, 781 (N.D.Ill.1994) (inmate's "allegations of verbal threats, racial epithets, and continued harassment" failed to meet objective component of Eighth Amendment).

disruptive behavior his food tray was to be provided  in a "securely taped" Styrofoam tray and placed onto the floor in his cell while he stood at the back of his cell.  The remedy investigation concluded that staff were following these procedures and had not at any time dropped the tray. There is absolutely no showing that Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff and disregarded that risk.  Moreover, Plaintiff's Eighth Amendment claim fails because he has not demonstrated any physical injury resulting from the alleged meal services. Throughout his confinement at MCAC his weight remained constant, and there is no demonstration that he experienced any medical problems resulting from the alleged improper meal distribution.[8]

Finally, with regard to Plaintiff's Fourteenth Amendment access-to-courts claim, the undersigned concludes that Plaintiff has brought forth sufficient information, through affidavit and exhibits, to suggest that he was harmed due to the alleged failure to return his requested legal materials.[9]  Plaintiff claims that he was a litigant in several cases in Circuit Court in Anne Arundel County at the time and was in need of his legal papers.  His attachments show that on August 30, 2005, three of these cases involving criminal prosecutions again him were nolle prossed.  *See* Paper No. 13, Ex. 6B-6D.   Plaintiff has  failed to demonstrate how his alleged lack of access to his legal materials caused him injury with regard to these cases.  He does, however, argue that his circuit court appeal of an administrative law judge decision in an IGO matter was dismissed for the failure

---

[8]     Plaintiff claims that he did not have access to his personal property, including his orthopedic shoes. He does not, however, indicate how the lack of access to shoes caused him medical injury.  Unrefuted materials indicate that Plaintiff had a diagnosis of Plantar Keratoses and there was no written physician order for orthopedic shoes.   Paper No. 13, Ex. 7A.

[9]     As part of this same exhausted claim Plaintiff alleges that his religious materials, *e.g.*, books, pamphlets, and study papers, were withheld. Defendants provide no substantive response to this claim in their summary judgment motions and reply.  Therefore, this claim shall proceed.

to comply with court order to provide requested documentation, *e.g.*, a copy of his IGO decision.[10]

Defendants provide no substantive, meritorious answer or defense to this claim. *See* Paper No. 31 at 6. Consequently, this particular claim shall proceed.

VI.  <u>Conclusion</u>

      For the aforementioned reasons, Defendants' Motions to Dismiss or for Summary Judgment shall be granted in part and denied in part.  A separate Order follows.


                  /s/

Date:__7/17/06_____       _____

                  William M. Nickerson
                  United States District Judge

---

[10]     According to his pleadings and exhibits, Plaintiff claims that on September 9, 2005, Anne Arundel Court Circuit Court Administrative Judge Joseph Manck denied his motion to waive prepayment of filing fees, granted him an additional 30 days to file a copy of the IGO decision in order to make a decision on the indigency motion, and warned him that the failure to provide the documentation in a timely manner would render his action frivolous.  Paper No. 13, Ex. 6A.  Plaintiff states that due to his inability to gain access to his legal papers, including the copy of the IGO decision, his circuit court case was dismissed.  Paper No. 25 at 4.